PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO.  1:24-cr-5-2 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| JEROME N. MORROW, | ) | |
| | ) | **ORDER** |
| Defendant. | ) | [Resolving ECF No. 49] |

Pending before the Court is Defendant Jerome N. Morrow's Motion to Suppress.  ECF No. 49.  Defendant also filed a Supplement to his Motion to Suppress and a Motion *in Limine*.[1] ECF No. 54.  The Government opposes both.  ECF No. 50; ECF No. 61 [SEALED].  Having considered the Parties' briefs and applicable law, Defendant's motion to suppress the evidence seized from the search of 223 Rockwell Place and 2117 W. 19th Street are denied.

## I.      BACKGROUND

### A.  Law Enforcement Investigation

In May 2022, officers from the Ashtabula Police Department and FBI Safe Streets Task Force met with a confidential informant ("CS") who reported co-Defendant Tara Dunbar sold fentanyl powder and pills from her home.  CS previously provided credible and reliable

---

[1] At ECF No. 51, the Court determined that it could resolve the legal questions presented in Defendant's motion to suppress (ECF No. 49) without an evidentiary hearing. That ruling is fully incorporated herein.  After the Court made that ruling, having "changed his direction", Defendant supplemented his Motion to Suppress and filed a Motion *in Limine*. ECF No. 54.  That motion is independent of ECF No. 49 will be considered in a separate order.

(1:24CR5-2)

information to law enforcement, and officers corroborated CS's information concerning

Dunbar's residence, motor vehicle (a black Dodge SUV that was parked outside the home), and

contact information.  ECF No. 49-3, ¶¶ 21–22; ECF No. 50 at PageID #: 378.

Law enforcement began surveilling Dunbar's home at 223 Rockwell Place, Ashtabula,

Ohio ("Rockwell Place" or "223 Rockwell Place").  ECF No. 49-3, ¶ 24.  Coordinating with CS,

they successfully completed three controlled purchases of fentanyl from Dunbar and Defendant

Jerome Morrow.  The first controlled buy was on May 31, 2022, after CS and Dunbar agreed to

meet at a nearby Walgreens.  ECF No. 49-3, ¶ 27; ECF No. 50 at PageID #: 378.  The

surveillance team observed Dunbar exit 223 Rockwell Place, get into her vehicle, and drive to

pick up CS before returning to Rockwell Place.  ECF No. 49-3, ¶¶ 28–30; ECF No. 50 at PageID

#: 378.  The narcotics CS obtained from Dunbar during this encounter tested positive for

fentanyl.  ECF No. 49-3, ¶ 32; ECF No. 50 at PageID #: 379.

The second controlled buy was on June 3, 2022.  ECF No. 49-3, ¶ 36.  CS made a

monitored phone call to Dunbar, and law enforcement heard her speaking to a man in the

background.  ECF No. 49-3, ¶ 37.  A man soon left 223 Rockwell Place, drove Dunbar's car, and

met CS to complete the drug sale.  ECF No. 49-3, ¶¶ 39–43; ECF No. 50 at PageID #: 379.  CS

identified the man as Morrow.  ECF No. 49-3, ¶ 45; ECF No. 50 at PageID #: 379.  The narcotics

obtained from Morrow tested positive for fentanyl.  ECF No. 50 at PageID #: 379.

The third controlled buy was on June 8, 2022.  ECF No. 49-3, ¶ 47.  Law enforcement

observed Dunbar and Morrow exit 223 Rockwell Place, get into Dunbar's vehicle, and drive to a

nearby Dollar General store.  ECF No. 50 at PageID ##: 379–80.  While there, CS contacted

Dunbar to set up the controlled buy.  Police officers observed Dunbar and Morrow drive back to

223 Rockwell Place.  Dunbar then exited the vehicle and went into the house before returning the

(1:24CR5-2)

vehicle a few minutes later.  Both Defendants then drove to meet with CS.  ECF No. 49-3, ¶¶ 47–51; ECF No. 50 at PageID #: 380.  Morrow was identified as the driver.  The narcotics CS obtained from the third controlled buy tested positive for fentanyl.  ECF No. 49-3, ¶ 53; ECF No. 50 at PageID #: 380.

### B.  Search Warrant for 223 Rockwell Place

Officers applied for a search warrant for 223 Rockwell Place and included a supporting probable cause affidavit setting forth: (1) a list of items sought and to be seized, including fentanyl or fentanyl analogs and other evidence of drug trafficking, such as packaging materials, drug paraphernalia, and records; (2) a summary of the police investigation, including information about the three controlled buys with CS; and (3) a summary of law enforcement surveillance conducted on Defendants and 223 Rockwell Place.  ECF No. 49-3.

An Ashtabula Municipal Court judge granted the search warrant for 223 Rockwell Place, and police executed it on June 10, 2022.  Defendants Dunbar and Morrow and their juvenile children were present.  Investigators located drug trafficking paraphernalia (including scales, baggies, cash, cell phones,) approximately 222.81 grams of lab-tested fentanyl, and a Springfield Model XD9 semiautomatic pistol with an extended magazine.

Defendants were provided *Miranda* warnings at the scene and cooperated with law enforcement.  They stated that the house contained the remainder of one kilogram of fentanyl, and that Morrow was expecting another kilogram in the mail.  ECF No. 50 at PageID ##: 380–81.  Police conducted a video recorded interview with Morrow at the police station later that day.[2]  ECF No. 61.  As the beginning of the interview, investigators asked Morrow if he recalled

---

[2] The Government, without objection from Defendant, submitted a recording of the questioning of Defendant.  *See* ECF No. 61.

(1:24CR5-2)

being given *Miranda* warnings at his house.  Morrow affirmed that he did.  ECF No. 54; ECF No. 61.  Morrow was then asked if he had any questions regarding his rights, to which he replied "no."  ECF No. 54; ECF No. 61.  Investigators then proceeded with the interview.  Both Dunbar and Morrow were later released from custody.  ECF No. 50 at PageID #: 381.

### C.  Federal Indictments and Arrest Warrants

On January 9, 2024, a federal grand jury returned a five-count indictment against Morrow and Dunbar.[3]  Morrow was charged conspiracy to distribute a mixture and substance containing a detectable amount of fentanyl in violation of 21 U.S.C. § 846 and three counts of distribution of the same controlled substance in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and 21 U.S.C. § 841(a)(1) and (b)(1)(B).  ECF No. 1.  On January 11, 2024, investigators executed arrest warrants for both Defendants.  When the arrest warrants were executed, Dunbar's address was 2117 West 19th Street, Ashtabula, Ohio ("2117 W. 19th St." or "W. 19th St.").

After initiating a traffic stop on Dunbar's vehicle, law enforcement officers arrested her.  Police found multiple cell phones and $6,445 in cash in Dunbar's purse.  During the stop, Dunbar told officers she did not know Morrow's location, but that he lived with her at W. 19th St.  ECF No. 50 at PageID #: 381.  Police proceeded to W. 19th St. to arrest Morrow.  Dunbar's son was at the house and stated he did not believe that Morrow was home.  Officers conducted a cursory sweep of the residence to locate Morrow.  During the sweep, they found a safe inside a large closet in the master bedroom.  On top of the safe and in plain view, officers saw scales and a plastic container coated with white powdery residue.  ECF No. 50 at PageID ##: 381–82.  Dunbar claimed Morrow slept in the master bedroom while she slept on the couch.  She also told

---

[3] Dunbar pled guilty and was sentenced to 60 months of incarceration.

4

(1:24CR5-2)

officers there were "a few grams of coke" in the master suite.  Dunbar was hesitant to consent to a search of the residence and, as such, police prepared a search warrant application.

### D.  Search Warrant for 2117 W. 19th St.

On January 11, 2024, law enforcement submitted a search warrant application to an Ashtabula Municipal Court judge.  The supporting affidavit provided: (1) an overview of the 2022 investigation, including the three controlled narcotics purchases from Dunbar and Morrow that resulted in the execution of a search warrant at 223 Rockwell Place; (2) information about the federal indictment and the issuance of two arrest warrants for Dunbar and Morrow; and (3) information regarding the execution of Dunbar's arrest warrant, including the cursory sweep of 2117 W. 19th St.  ECF No. 49-2, ¶¶ 22–28.

The affidavit stated that upon arriving at 2117 W. 19th St., officers conducted a protective sweep of the residence and "observed, in plain view, inside the master bedroom closet, two digital scales, a plastic container which had a white powdery residue on the outside."  ECF No. 49-2, ¶ 28.  In addition, Dunbar was given her *Miranda* warnings and then told officers that "there was drug activity occurring from within the residence but implied that MORROW was responsible."  ECF No. 49-2, ¶ 30.

The search warrant was issued and, under the subsequent search, law enforcement found scales, baggies, containers with drug residue, and several thousands of dollars.  Laboratory tests confirmed that the safe in the master bedroom contained 628.35 grams of cocaine.  Officers contacted Morrow by phone and requested that he turn himself in.  Morrow said he would think about it and then, according to the Government, immediately left the state.  His departure was in violation of his term of supervised release.  Several months later, on September 25, 2024, Defendant was arrested in the Western District of Pennsylvania.  To date, the Government has

5

(1:24CR5-2)

not charged Morrow with the drugs found at the W. 19th St. address.  ECF No. 50 at PageID #: 383.

## II.    DISCUSSION

Defendant argues that the affidavits supporting the search warrants for 223 Rockwell Place (ECF No. 49-3) and 2117 W. 19th St. (ECF No. 49-2) do not establish probable cause because the information contained therein does not establish a sufficient nexus between the alleged drug trafficking and the two residences searched.  Defendant's arguments are not well taken.

### A.  Defendant's Standing

The Government does not contest Defendant's standing to assert a Fourth Amendment challenge to the two search warrants.  *See generally* ECF No. 50.  Even so, it is Defendant's burden to establish his standing to assert such a violation.  *See United States v. Salvucci*, 448 U.S. 83, 86 (1980); *United States v. Smith*, 263 F.3d 571, 582 (6th Cir. 2001).

"Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978).  Because the Fourth Amendment protects "people not places," *Katz v. United States*, 389 U.S. 347, 351 (1967), Defendant has standing to challenge the admission of evidence only if his own constitutional rights have been violated.  *Rakas*, 439 U.S. at 133–34 (finding a plaintiff lacks standing to assert a Fourth Amendment challenge simply because he is aggrieved by the introduction of damaging evidence seized from a third party).  *See United States v. Padilla*, 508 U.S. 77, 87 (1993); *United States v. Davis*, 430 F.3d 345, 359–60 (6th Cir. 2005).  "Coconspirators and codefendants have been accorded no special standing." *Padilla*, 508 U.S. at 82 (quoting *Alderman v. United States*, 394 U.S. 165, 171–72 (1969)).  *See United States v. Williams*, 354 F.3d 497, 511 (6th Cir. 2003).

6

(1:24CR5-2)

Defendant's standing to challenge the two search warrants thus depends on whether he had a "reasonable expectation of privacy" in the homes at Rockwell Place and W. 19th St.  *See United States v. Thomas*, 662 F. App'x 391 (6th Cir. 2016).  The Sixth Circuit applies a two-part test to determine whether there is a reasonable expectation of privacy: (1) "whether the individual, by conduct, has exhibited an actual expectation of privacy; that is, whether he has shown that he sought to preserve something as private"; and (2) "whether the individual's expectation of privacy is one that society is prepared to recognize as reasonable." *United States v. Waller*, 426 F.3d 838, 844 (6th Cir. 2005).  Individuals have a reasonable expectation of privacy in their homes and personal bedrooms.  *See, e.g.*, *United States v. Allen*, 720 F. App'x 254, 257–58 (6th Cir. 2018) (holding that an individual has a reasonable expectation of privacy in their home, even if only a temporary residence, and particularly in the bedroom where they sleep).

There is ample evidence that Morrow lived at both residences when they were searched. The affidavit supporting the Rockwell Place warrant stated that "[Morrow] is listed with [Dunbar] in the APD police report from 5/17/22 which indicated they reside together."  ECF No. 49-3, ¶ 45.  During two of the controlled narcotics purchases, investigators observed Morrow leaving Rockwell Place and driving Dunbar's vehicle.  ECF No. 49-3, ¶¶ 39, 45–46, 54. Similarly, upon her arrest in January 2024, Dunbar told law enforcement that Morrow lived with her at 2117 W. 19th St. and that he stayed in the master bedroom, while she slept on the couch. ECF No. 49 at PageID #: 318.

Accordingly, Defendant has standing to advance a Fourth Amendment violation.

7

(1:24CR5-2)

### B.  Search Warrants' Probable Cause

The Fourth Amendment mandates that search warrants may be issued only "upon probable cause, supported by Oath or affirmation."  U.S. Const. Amend. IV.  "[T]o establish probable cause for a search, an affidavit must show a likelihood of two things: first, that the items sought are 'seizable by virtue of being connected with criminal activity[;]' and second, 'that the items will be found in the place to be searched.'"  *United States v. Church*, 823 F.3d 351, 355 (6th Cir. 2016) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 n. 6 (1978)).  In other words, a warrant must be supported by an affidavit indicating "a 'fair probability' that evidence of a crime will be located on the premises of the proposed search."  *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005) (citing *United States v. Bowling*, 900 F.2d 926, 930 (6th Cir. 1990)).  Whether an affidavit demonstrates probable cause "depends on the totality of the circumstances."  *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (citing *Illinois v. Gates*, 462 U.S. 213, 230 (1983)).

"The findings of the state court judge who issued the search warrant are entitled to great deference, and should be overturned only if they are found to be arbitrary."  *United States v. Hernandez*, No. 2:15-cr-97, 2016 WL 5387692, at * 3 (S.D. Ohio Sept. 27, 2016) (citing *United States v. Thomas*, 605 F.3d 300, 307 (6th Cir. 2010)).  To determine whether probable cause exists to justify a search warrant, the issuing judge must undertake a "practical, common-sense" evaluation of "all the circumstances set forth in the affidavit before him."  *Gates*, 462 U.S. at 238.  A court looks "only to the four corners of the affidavit; information known to the officer but not conveyed to the magistrate is irrelevant."  *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010) (citing *United States v. Pinson*, 321 F.3d 558, 565 (6th Cir. 2003)).

8

(1:24CR5-2)

### 1. *223 Rockwell Place Search*

Defendant claims the affidavit supporting the 223 Rockwell Place warrant lacked probable cause because the facts contended therein do not establish a sufficient nexus between Defendant's alleged drug trafficking and the residence.  ECF No. 49 at PageID ##: 327–28.  He argues that, without more, his status as a drug dealer does not give rise to a "fair probability that drugs will be found in his home."  ECF No. 49 at PageID #: 328 (citing *United States v. Brown*, 828 F.3d 375, 383 (6th Cir. 2016)).  In support, Defendant alleges that: (1) there were no drug sales at the house; (2) it was normal for him and Dunbar to come and go from the house; and (3) there is no evidence or credible allegation that any drugs alleged to have been sold were located at either residence.  ECF No. 49 at PageID #: 328.  These arguments are unpersuasive.

In *United States v. Carpenter*, 360 F.3d 591 (6th Cir. 2004) (*en banc*), the Sixth Circuit held that an affidavit supporting a search warrant must demonstrate a specific and concrete—rather than "vague" or "generalized"—nexus between the evidence sought and the place to be searched.  *Id.* at 594–95.  Recently, the Sixth Circuit held that when law enforcement observes a defendant leave a residence, complete a drug transaction, and then return to that residence, such "observations establish a fair probability that [the defendant] was storing illegal drugs in the residence or, at least, 'evidence of drug trafficking.'"  *United States v. Florence*, 150 F.4th 773, 778 (6th Cir. 2025) (citing *United States v. Sanders*, 106 F.4th 455, 463–64 (6th Cir. 2024) (*en banc*)).

Morrow misapprehends the Government's position if he believes it was only his known status as a known drug dealer that resulted in the issuance of the contested search warrants.  The 223 Rockwell warrant affidavit includes numerous observations of both Morrow and Dunbar leaving 223 Rockwell, driving in Dunbar's vehicle to meet with CS, completing a controlled

(1:24CR5-2)

drug transaction, and directly returning to 223 Rockwell Place. *See* ECF No. 49-3 at PageID ##: 367-71, ¶¶ 37-55. As noted in *Florence*, such observations are sufficient to establish a fair probability that Defendants were storing illegal drugs in 223 Rockwell Place or that evidence of drug trafficking would be found there. *Florence*, 2025 WL 2539022, at *3.

Therefore, the affidavit sufficiently demonstrates a nexus between Defendant's alleged drug trafficking and Rockwell Place. Defendant's motion to exclude the evidence seized during the execution of the 223 Rockwell Place search warrant is denied.

### 2. 2117 W. 19th Street Search

Concerning the January 2024 search warrant for 2117 W. 19th St., Defendant argues that: (1) police did not have probable cause or authority to enter the house to search for Morrow; and (2) Dunbar's consent to search the house given was under duress. ECF No. 49 at PageID #: 323–24. The Government counters that law enforcement officers did not rely on Dunbar's consent to search the W. 19th St. residence. Rather, the officers conducted a protective sweep of the house to search for Morrow and, while doing so, lawfully searched the master bedroom closet. ECF No. 50 at PageID ##: 383–84. More importantly, Dunbar's hesitancy to consent to search the house prompted officers to obtain a search warrant. ECF No. 50 at PageID #: 388. Both searches were legally justified.

At the threshold, an arrest warrant "imbues officers with 'the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.'" *United States v. Dunbar*, No. 22-3087, 2022 WL 17245098, at *2 (6th Cir. Nov. 28, 2022) (citing *Payton v. New York*, 445 U.S. 574, 603 (1980)). Armed with an arrest warrant, the officers were justified in searching for Morrow is a place understood to be his home. All they

10

(1:24CR5-2)

needed was a reasonable belief, based on common sense factors and the totality of the circumstances, that Morrow: (1) lived at 2117 W. 19th St.; and (2) would be found inside. *Id*.

Dunbar told officers that Morrow lived with her at W. 19th St. and her son. When both Dunbar and her son were asked, neither stated definitively that Defendant was not at home. ECF No. 49 at PageID #: 318. As a result, the officers had a reasonable belief that Defendant would be found in his home and therefore lawfully conducted a cursory search of the house, including the large master bedroom closet. *See United States v. Pruitt*, 458 F.3d 477, 485 (6th Cir. 2006) ("reasonable belief that a suspect is within the residence, based on common sense factors and the totality of the circumstances, is required to enter a residence to enforce an arrest warrant."); *Maryland v. Buie*, 494 U.S. 325, 337 (1990) (holding that police officers may conduct a limited protective sweep in conjunction with an in-home arrest).

Because the sweep was lawful, the inclusion of the items discovered in the master bedroom closet and in plain view of the officers (scales, plastic containers with a white powdery residue) were properly included in the affidavit supporting the W. 19th St. warrant. Considering the totality of the circumstances, including police observations during the sweep and Dunbar's post-*Miranda* admissions that there was (a) cocaine in the house and (b) drug trafficking activities were occurring from the residence, the affidavit included sufficient information to establish probable cause.

Defendant's motion to suppress evidence seized from 2117 W. 19th Street is denied.

### III.     CONCLUSION

For the reasons above, Defendant's Motion to Suppress (ECF No. 49) evidence seized from 223 Rockwell Place and 2117 W. 19th Street is denied. The Court reserves ruling on the

(1:24CR5-2)

admissibility of statements made by Defendant to law enforcement.  Therefore, his Supplemental

Motion to Suppress and Motion *in Limine* (ECF No. 54) remain pending.


      IT IS SO ORDERED.


| January 13, 2026 | /s/ Benita Y. Pearson |
|---|---|
| Date | Benita Y. Pearson |
| | United States District Judge |

12